UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────────────X
CP FOUNDATION OF NASSAU, INC., and UNITED
CEREBRAL PALSY ASSOCIATION OF NASSAU,
INC.,

                Plaintiffs,

    -against-

HOWARD MEYERS, as Personal Representative of
the Estate of Dena Meyers,

                Defendant.
───────────────────────────────────────X

For Online Publication Only

**MEMORANDUM AND ORDER**
17-CV-1866 (JMA) (AYS)

**FILED**
**CLERK**
3/27/2019 2:01 pm
**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**APPEARANCES:**

Andrew Leslie Zwerling
Garfunkel Wild, P.C.
111 Great Neck Road, Suite 503
Great Neck, NY 11021
    *Attorney for Plaintiffs*

Gary B. Freidman
Greenfield Stein & Senior LLP
600 Third Avenue, 11th Floor
New York, NY 10016
    *Attorney for Defendant*

**AZRACK, United States District Judge:**

    On April 3, 2017, plaintiffs CP Foundation of Nassau, Inc. and United Cerebral Palsy Association of Nassau, Inc. ("Plaintiffs") commenced this action against Dena Meyers seeking a declaratory judgment that she is obligated to satisfy a $1,000,000 charitable pledge as well as specific performance of that alleged obligation. (ECF No. 1.) Before the Court is defendant's motion to dismiss the complaint. (ECF No. 20.) For the reasons discussed below, the Court grants defendant's motion and dismisses Plaintiffs' complaint in its entirety.

# I. BACKGROUND

United Cerebral Palsy Association of Nassau, Inc. ("UCP Nassau") is an independent, not-for-profit health agency serving children and adults with cerebral palsy and other developmental disabilities at its treatment facility in Roosevelt, New York. (Compl. ¶ 2.) CP Foundation of Nassau, Inc. (the "Foundation") is UCP Nassau's not-for-profit fundraising entity charged with raising funds to support the facility. (Id. at ¶ 8.)

Stephen Meyers—the son of Dena and Ellis Meyers—resided in UCP Nassau's facility from 1981 until his death in May 2004. (Id. at ¶ 10–11.) On March 20, 2007, Dena and Ellis Meyers (the "Meyers") and the Foundation executed a document entitled "2007 Pledge Agreement" (the "Pledge Agreement"). (Id. at ¶ 13.) The Pledge Agreement provides, in relevant part:

> 1. <u>Donors' Intent to Provide Charitable Bequests</u>. The Donors [Ellis and Dena Meyers] intend to execute estate planning documents, whether by Last Will and Testament, Inter Vivos Trust Agreement, or beneficiary designation, which provide that upon the death of the surviving Donor (or, should the Donors so desire, upon the death of either of them) that a charitable bequest of not less than One Million Dollars ($1,000,000) from the Donors be left to the Charity [the Foundation]. *Notwithstanding the foregoing, the Donors are not obligated to undertake the lifetime gifts and/or testamentary bequests contemplated herein, but intend to do the same.*
>
> 2. <u>Charity Commitments</u>. Upon receipt of funds receiving during the lifetime of the Donors, and upon receipt of the bequest(s) set forth above, the Charity shall establish and maintain an endowment fund as follows: . . .
>
> > E. The Charity intends to acknowledge receipt of the bequests through a naming ceremony to be scheduled at an [sic] mutually convenient time following the execution of this Pledge Agreement, and the Charity intends to acknowledge receipt as follows:
> >
> > > (1) If the sum of the lifetime gifts and testamentary bequests are equal to or greater than $1,000,000, the Adult Program Wing of the Charity shall be named "The Ellis and Dena Meyers Pavilion" with a sign on the outside wall of said building wing equivalent to the draft sign shown on the page affixed to this Pledge Agreement; and

> (2) A plaque stating: "The Ellis and Dena Meyers Pavilion, establish [sic] in honor and memory of Stephen Meyers," in a form equivalent to the draft of said plaque shown on the page affixed to the Pledge Agreement, shall be affixed near the outside entrance of said building wing.

(Pledge Agreement, Ex. 2 to Compl. at 1–3) (emphasis added). The Pledge Agreement also states that it shall be governed by New York law, that "[n]o supplement, modifications or amendments to this pledge agreement shall be binding unless executed in writing by all of the parties," and that "[t]his pledge agreement will be binding and shall inure to the benefit of the undersigned, their executors, personal representatives, administrators, heirs, representatives, successors and assigns." (Id. at 3–4.)

In June 2007, Plaintiffs held a dedication ceremony to rename the Adult Day Program Building of UCP Nassau as the "Ellis and Dena Meyers Pavilion" and installed a plaque dedicating the Pavilion to Stephen Meyers on the building, which reads: "The Ellis and Dena Meyers Pavilion, established in honor and memory of Stephen Meyers." (Compl. ¶¶ 17–20.) At the dedication ceremony, Ellis Meyers gave a speech and remarked: "We consider the bequest a small gesture on our part to say thank you so much." (UCPN Newsletter, Ex. 3 to Compl. at 1–2.) The signage and plaque remain in place today.

In September 2013, the Meyers executed a document entitled "Revocation of 2007 Pledge Agreement," which stated that the Meyers "hereby revoke in its entirety the 2007 Pledge Agreement executed by us on March 20, 2007 wherein we indicated we intended to make but are not required to make a testamentary bequest of [$1,000,000] to the [Foundation] upon the death of the surviving Donor." (Revocation of 2007 Pledge Agreement ("2013 Revocation"), Ex. 5 to Compl. at 1.) In December 2014, Ellis Meyers passed away. (Id. at ¶ 21.)

In February 2017, Plaintiffs' counsel asked Dena Meyers's attorney about the status of

the charitable pledge in the Pledge Agreement. (Id. at ¶ 22.) Dena Meyers's counsel informed Plaintiffs that Ellis Meyers had passed away and that, before his death, the Meyers executed the 2013 Revocation, which expressed their intention to not make the charitable bequest. (Id. at ¶ 23.) This was the first time Plaintiffs became aware of the 2013 Revocation.

Dena Meyers died shortly after Plaintiffs' complaint was filed and Howard Meyers, in his capacity as personal representative of Mrs. Meyers's estate, was substituted as the Defendant by an Order dated November 13, 2017.

In this suit, Plaintiffs seek a declaration that the Defendant is obligated to make the charitable bequest contemplated by the Pledge Agreement as well as an order for specific performance of that obligation. (Id. at ¶ 10.) The complaint, in sum, alleges that the "Plaintiffs and the Meyers executed the 2007 Pledge Agreement, intending to be bound by the mutual promises contained therein." (Id. at ¶ 45.) According to the complaint, "Defendants made a clear and unambiguous promise to Plaintiffs," (id. at ¶ 57), and Plaintiffs "detrimentally relied upon the Meyers' promises made in the 2007 Pledge Agreement, incurring the cost and expense of the dedication ceremony, the signage to rename the Adult Program Wing . . . and the cost for production of the related plaque dedicating the Pavilion . . . amongst other actions," (id. at ¶ 28–29). Thus, Plaintiffs allege that Defendant "did not comply with the terms of the 2007 Pledge Agreement and are in breach thereof." (Id. at ¶ 36.)

## II. DISCUSSION

### A. <u>Standard of Review</u>

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. In reviewing the motion, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). When deciding a motion to dismiss, a court may consider materials attached to the complaint, materials integral to the complaint, and materials incorporated into the complaint by reference. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

Here, the parties' dispute centers on whether the Pledge Agreement and the Meyers's subsequent conduct amounted to an enforceable promise under the traditional theories of contract, such as unilateral contract and promissory estoppel. Both parties also argue that other doctrines affect the application of the traditional theories of contract in this context. Specifically, Defendant argues that because the Pledge Agreement concerns a testamentary bequest, Plaintiffs must "indisputably demonstrate [the Meyers'] intent to renounce [their] right to freely execute a subsequent will during [their] lifetime[s]. American Comm. For Weizmann Inst. of Science v. Dunn, 10 N.Y.3d 82, 86 (2008). Plaintiffs, on the other hand, argue that there is a countervailing public policy in New York that favors enforcement of charitable pledges.

1. **Unilateral Contract**

Plaintiffs argue that the Pledge Agreement is enforceable as a unilateral contract that became a binding obligation on the Meyers once Plaintiffs acted in reliance upon it to their detriment. (Pls.' Mem. 2.) "A unilateral contract consists of an offer or promise to do something in exchange for an act[;] [t]he acceptance of such offer or promise is effected by the performance

5

of the act in accordance with the offer." Ingrassia v. Shell Oil Co., 394 F. Supp. 875, 882 (S.D.N.Y. 1975); see Emerling v. Village of Hamburg, 680 N.Y.S.2d 37, 38 (4th Dep't 1998) ("The essence of a unilateral contract . . . is a promise for an act."). According to Plaintiffs, once they hosted the dedication ceremony, renamed the wing, and installed the plaque in reliance on the Meyer's alleged promise, the Meyers were bound to make a charitable bequest pursuant to the Pledge Agreement. (Pls.' Mem. 5.) This argument, however, overlooks the express language of the Pledge Agreement. The last sentence of Section 1 of the Pledge Agreement expressly states that the Meyers are not obligated to undertake the charitable bequest contemplated therein:

> <u>1. Donors' Intent to Provide Charitable Bequests</u>. The Donors intend to execute estate planning documents, whether by Last Will and Testament, Inter Vivos Trust Agreement, or beneficiary designation, which provide that upon the death of the surviving Donor (or, should the Donors so desire, upon the death of either of them) that a charitable bequest of not less than One Million Dollars ($1,000,000) from the Donors be left to the [Foundation]. *Notwithstanding the foregoing, the Donors are not obligated to undertake the lifetime gifts and/or testamentary bequests contemplated herein, but intend to do the same.*

(Pledge Agreement, at 1 (emphasis added).) In other words, the Meyers did not promise to make the charitable bequest.

Thus, the 2007 Pledge Agreement is not a unilateral contract—nor any type of contract—because it lacks an enforceable promise. 1 WILLISTON ON CONTRACTS, § 1:17 (4th ed. 2007) ("A unilateral contract results from an exchange of a promise for an act."). "A promise is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." Merritt Hill Vineyards, Inc. v. Windy Heights Vineyard, Inc., 61 N.Y.2d 106, 112, 460 N.E.2d 1077, 1081 (1984) (internal quotation marks and citation omitted). The definition of a promise is antithetical to the plain language of the Pledge Agreement, which, as previously noted, provides that "the [Meyers] are not obligated to undertake the lifetime gifts and/or testamentary bequests contemplated [in the

Pledge Agreement], but intend to do the same." (Pledge Agreement, at 1.) Plaintiffs characterize this language as an "acknowledgment of [the Pledge Agreement's] nature as a unilateral contract that would not have been enforceable unless or until Plaintiffs changed their position and relied upon it to their detriment (as they did)." (Pls.' Mem. 14.) This is a misreading of the Pledge Agreement. Not only does the agreement unambiguously reject the creation of a promise by Defendant, it also shows that Plaintiffs were under no obligation to host a dedication ceremony, rename the building, and install the plaque unless and until the Meyers' gift was received:

> 2. <u>Charity Commitments</u>. *Upon receipt* of funds receiving during the lifetime of the Donors, and *upon receipt* of the bequest(s) set forth above, the Charity shall establish and maintain an endowment fund as follows: . . .
>
> > E. The Charity *intends to acknowledge receipt of the bequests* through a naming ceremony to be scheduled at an [sic] mutually convenient time following the execution of this Pledge Agreement, and the Charity *intends to acknowledge receipt* as follows:
> >
> > > (1) *If* the sum of the lifetime gifts and testamentary bequests are equal to or greater than $1,000,000, the Adult Program Wing of the Charity shall be named "The Ellis and Dena Meyers Pavilion" with a sign on the outside wall of said building wing equivalent to the draft sign shown on the page affixed to this Pledge Agreement; and
> > >
> > > (2) A plaque stating: "The Ellis and Dena Meyers Pavilion, establish in honor and memory of Stephen Meyers," in a form equivalent to the draft of said plaque shown on the page affixed to the Pledge Agreement, shall be affixed near the outside entrance of said building wing.

(Pledge Agreement, at 1–3 (emphasis added).) For these reasons, the Pledge Agreement is not an enforceable unilateral contract. Consequently, the Court need not pass on whether Plaintiffs' hosting of the dedication ceremony, renaming the wing, and installing the plaque is sufficient consideration in support of the alleged contract. (<u>See</u> Pls.' Mem. 5–9.)

### 2. Promissory Estoppel

Similarly, Plaintiffs' assertion that the Pledge Agreement is enforceable under promissory estoppel is unavailing. (Pls.' Mem. 19.) "To establish promissory estoppel, a party must prove a clear and unambiguous promise, reasonable and foreseeable reliance by the party to whom the promise is made, and an injury sustained in reliance on that promise." Weaver v. Town of North Castle, 153 A.D.3d 531, 534, 60 N.Y.S.2d 236, 240 (2d Dep't 2017). Plaintiffs' argument assumes the existence of a clear and unambiguous promise in the Pledge Agreement which, as previously noted, is not the case. See supra Section (A)(1). Nor does Ellis Meyers's statement at the dedication ceremony convey a clear and unambiguous promise. (See UCPN Newsletter at 1–2) ("[We] considered the bequest a small gesture on our part to say thank you so much."). Accordingly, Plaintiffs' promissory estoppel claim fails for this reason. As such, it is unnecessary for the Court to address whether Plaintiffs' hosting of the dedication ceremony, renaming the wing, and installing the plaque amount to detrimental reliance. (See Pls.' Mem. 13.)

### 3. The Charitable Pledge Doctrine

Plaintiff asserts that there is a strong public policy in New York favoring enforcement of charitable pledges as unilateral contracts. (Pls.' Mem. 3–4.) "Indeed, courts, in the enforcement of such agreements, seek to resolve doubtful questions so as to avoid their repudiation." Woodmere Academy v. Steinberg, 41 N.Y.2d 746, 749–50 (1927); see Allegheny Coll. v. Nat'l Chautauqua Cty. Bank of Jamestown, 246 N.Y. 369, 372 (1927) ("[In the context of charitable pledges,] we have found consideration present where the general law of contract, at least as then declared, would have said that it was absent."). According to Plaintiffs, "the Pledge Agreement's language regarding the parties' 'intention' to be bound in the future, without any

8

present obligation, is reflective of this long-standing concept, well-settled in New York Law." (Pls.' Mem. 4–5.) This argument is also unavailing. While courts have enforced charitable pledges even when it is questionable that consideration was provided, they have not done so in the absence of a promise. For example, in Allegheny College, the promisor conveyed an express, present intention to be bound:

> I hereby subscribe and will pay to the order of the Treasurer of Allegheny College . . . the sum of Five Thousand Dollars; . . . This obligation shall become due thirty days after my death, and I hereby instruct my Executor, or Administrator, to pay the same out of my estate.

246 N.Y. at 371; see also Woodmere Academy, 41 N.Y.2d at 750 (mentioning that the parties executed "documents [that] on their face express a complete agreement with only one expressed condition."). The issue before the Allegheny College court was not whether the agreement contained a promise, but whether a charitable pledge is enforceable when consideration is doubtful. Id. at 378. Here, however, even if there was consideration, the parties did not express an intent to be bound. New York's public policy in favor of enforcing charitable pledges does compensate for the lack of a promise by Defendant. See In re Hitt, No. 5453/90, 1993 WL 13715548 (Sur. Co. New York Co. May 6, 1993) ("Even if the charitable pledge doctrine was applied here to supply the missing element of consideration, such doctrine would not resolve the lack of the other essential elements of contract (i.e., an intention to be bound . . . .")). Moreover, even assuming arguendo that, under the charitable pledge doctrine, ambiguous terms will be construed in a manner favoring enforcement of a charitable pledge, there is no ambiguity in the Pledge Agreement, which unequivocally states that "the [Meyers] are not obligated to undertake the lifetime gifts and/or testamentary bequests contemplated [in the Pledge Agreement], but intend to do the same." (Pledge Agreement, at 1.) Thus, the charitable pledge doctrine cannot save Plaintiffs' claims here. Cf. Hitt, 1993 WL 13715548 ("The charitable pledge doctrine does

9

not apply to situations where, as here, there is no indication that decedent ever intended her social correspondence to constitute a binding legal commitment.").

### 4. Contracts to Make a Testamentary Disposition

In support of the motion to dismiss, Defendant claims that the Pledge Agreement is also unenforceable as a contract to make a testamentary disposition pursuant to the New York Estates Powers & Trusts Law ("EPTL") § 13-2.1. EPTL § 13-2.1 allows a testator to "contract outside the will to make a testamentary disposition, but because freedom of testation is such a strong part of American jurisprudential public policy, courts require a heavy burden of the person claiming the benefit to prove that the decedent did in fact enter into such a contract." (Margaret Valentine Turano, 2008 Practice Commentaries, EPTL § 13-2.1.) Pursuant to EPTL § 13-2.1(a)(2), "a contract to make a testamentary provision of any kind" must be "in writing and subscribed by the party to be charged." Here, the Pledge Agreement is in writing and signed by the Meyers. However, to be enforceable, the Pledge Agreement must also "indisputably demonstrate decedent's intent to renounce her right to freely execute a subsequent will during her lifetime." Dunn, 10 N.Y.3d at 86. Stated another way, the agreement must clearly evince the decedent's intention to renounce her right to revoke the promise. See e.g., Matter of Attanasio, 159 A.D.3d 1180, 1180–81, (3d Dep't 2018) (quoting Aaron v. Aaron, 64 A.D.3d 1103, 1104 (3d Dep't 2009) (finding no "clear and unambiguous manifestation of [decedent's] intention to renounce the future power of testamentary disposition" in the agreement due to, inter alia, decedent's use of precatory language, the fact that the services in question would not begin until decedent's death, and because the agreement was not, by its terms, irrevocable).

Case law has not squarely addressed how courts should reconcile the potential conflict created by the charitable pledge doctrine—which favors enforcement of charitable pledges—and

the requirement for contracts to make testamentary dispositions, articulated in Dunn, that the evidence must "indisputably demonstrate decedent's intent to renounce her right to freely execute a subsequent will during her lifetime." Dunn, 10 N.Y.3d at 86. However, Dunn itself suggests that this high bar for testamentary provisions is unaffected by the charitable pledge doctrine. See id., at 93 (finding evidence concerning alleged bequest to charity was insufficient to "unequivocally renounce decedent's right to execute a will making no provision for [the promisee]" and making no mention of the charitable pledge doctrine). Certainly, Plaintiffs cannot meet that high burden here. Indeed, instead of renouncing their right dispose of the funds in a subsequent will, the Meyers expressly retained it by including the last sentence of Section 1 in the Pledge Agreement.[1] Moreover, as the Court explained earlier in discussing the basic principles of unilateral contract and promissory estoppel, even without the heightened requirement for testamentary provisions, Plaintiffs' claims fail.

In response to Defendant's argument concerning the high bar for testamentary bequests, Plaintiffs reiterate their promissory estoppel argument and cite In re Estate of Hennel, 29 N.Y.3d 487, 493 (2017), where the New York Court of Appeals enforced an oral promise to make a testamentary bequest, reasoning "that [EPTL § 13-2.1] will not apply if petitioners can establish the elements of promissory estoppel and that they would otherwise suffer unconscionable injury." (Pls.' Mem. 12–13). In Hennel, the Court of Appeals focused on the unconscionable injury requirement and did not address whether the decedent's oral statement that the mortgage on his property would be satisfied by funds from his estate qualified as an unambiguous promise.

---

[1] This is further underscored by the 2013 Revocation, which stated that the Meyers "hereby revoke in its entirety the 2007 Pledge Agreement executed by us on March 20, 2007 wherein we indicated we intended to make but are not required to make a testamentary bequest of [$1,000,000] to the [Foundation] . . . ." (2013 Revocation at 1); see e.g., Attanasio, 159 A.D.3d at 1181 ("There is no language in this agreement evincing an intent to make the agreement irrevocable. That alone renders the agreement unenforceable, a result consistent with decedent's subsequent revocation document.").

11

Hennel, 29 N.Y.3d at 495.  However, the Appellate Division's decision below in Hennel found that this statement satisfied the "unambiguous promise" element of promissory estoppel.  See In re Estate of Hennel, 133 A.D.3d 1120, 1123, 20 N.Y.S.3d 460, 464 (3d Dep't 2015).  Thus, to prove promissory estoppel in the context of a testamentary disposition, a plaintiff must still prove, at the very least, an unambiguous promise—which Plaintiffs cannot do here.

Plaintiffs point to Ellis Meyers's statement at the dedication ceremony as confirmatory of the Defendant's promise to make a bequest to the Foundation.  (UCPN Newsletter, at 1–2) ("[We] considered the bequest a small gesture on our part to say thank you so much.").  Plaintiffs' claim that this statement amounts to an unambiguous promise is unpersuasive.  Unlike Hennel, where the decedent's statement conveyed an unambiguous promise, Ellis Meyers' statement, even viewing it in a light most favorable to Plaintiffs, does not.  Because Plaintiffs have not shown an unambiguous promise, the Court need not determine whether Plaintiffs can show unconscionable injury or detrimental reliance.

Additionally, Plaintiffs' reliance on Goodale v. Central Suffolk Hospital is unavailing.  In Goodale, the court suggests that the alleged oral promise—"for a million dollars, you can name [the facility] whatever you want"—created an understanding in the promisee that he would have naming rights to a facility upon completion of his obligations under a pledge agreement.  No. 2030/2013, 2014 WL 8770904, at *2–3 (N.Y. Sup. Apr. 4, 2014).  Ellis Meyers' statement at the dedication ceremony, on the other hand, did not clearly convey an unambiguous promise.  Further, in Goodale, the alleged promise preceded the promisee's reliance; whereas, here, Plaintiffs' purported reliance preceded the alleged oral promise made by Ellis Meyers.  Plaintiffs' promissory estoppel theory fails for these reasons.

Because the Pledge Agreement did not create a promise, Defendant's motion to dismiss

Plaintiffs' complaint for failure to state a claim is granted.[2]

### III. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is granted and Plaintiff's complaint is dismissed in its entirety.

**SO ORDERED.**

Dated: March 27, 2019
Central Islip, New York

/s/ (JMA)
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE

---

[2] Defendant also alleges that UCP Nassau lacks standing since it was not a signatory to the Pledge Agreement. (Def. Mem. 16.) This issue is moot because Plaintiffs' complaint is dismissed in its entirety.